# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

**HAILEY SHERRILL,**

   Plaintiff,

v.

   Case No. ___CIV-26-100-DES

**CITY OF VIAN, OKLAHOMA;**
**ROBERT RYAN RICE,** individually; and
**KAITLYN MARIE SANDERS,** individually,

   Defendants.

## COMPLAINT AND JURY DEMAND

Plaintiff Hailey Sherrill ("Plaintiff" or "Ms. Sherrill"), by and through her attorneys, Laird, Hammons, Laird, PLLC, brings this Complaint against Defendants City of Vian, Oklahoma ("City of Vian" or the "City"), Robert Ryan Rice ("Defendant Rice"), and Kaitlyn Marie Sanders ("Defendant Sanders"), and in support thereof states the following:

### I. INTRODUCTION

1.    This is a civil rights action arising under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution, as well as under the laws of the State of Oklahoma, including the Oklahoma Governmental Tort Claims Act, 51 O.S. § 151 et seq. This action seeks compensatory damages, punitive damages, and attorney's fees for the violation of Plaintiff's constitutional

rights and for the injuries she sustained as a result of Defendant Rice's unlawful use of force, Defendant Sanders' failure to intervene, and the City of Vian's negligence.

2.    On September 25, 2024, in the supposed pursuit of a wanted individual, Defendant Rice — a sworn officer of the Vian Police Department — orchestrated an unlawful scheme to enter Ms. Sherrill's home without a warrant. When Ms. Sherrill exercised her constitutional right to refuse entry, Defendant Rice used the apartment complex manager as a proxy to circumvent that refusal. He then entered her home over her continued and unequivocal objections.

3.    Once inside Ms. Sherrill's home — a home he had no legal authority to be in — Defendant Rice subjected her to a violent and unprovoked assault. He grabbed her by the throat, slammed her into a wall, and then deployed his department-issued Taser directly into her body — not once, but twice — without any verbal warning. Ms. Sherrill was unarmed. She was in her own home. She posed no threat to anyone.

4.    Defendant Rice then arrested Ms. Sherrill on fabricated charges, jailing her overnight at the Sequoyah County Detention Center. The next day, when the Vian Police Chief reviewed the body camera footage, he contacted the District Attorney's Office and secured her immediate release, recognizing that the arrest was wholly without legal basis. No charges have been prosecuted against Ms. Sherrill.

5.    The Oklahoma State Bureau of Investigation subsequently investigated Defendant Rice's conduct, and the State of Oklahoma filed criminal charges against him, including felony Perjury for false statements in his arrest affidavit, felony Assault and Battery with a Dangerous Weapon for his deployment of the Taser against Ms. Sherrill, and misdemeanor Breaking and Entering for his unlawful entry into

her home. On January 12, 2026, Defendant Rice entered pleas of No Contest to these charges in Sequoyah County District Court, Case No. CF-2025-00154, resulting in a deferred sentence for felony Perjury.

6.     Defendant Sanders, a fellow officer of the Vian Police Department, was present throughout this encounter, personally participated in restraining Ms. Sherrill, and failed to intervene to stop Defendant Rice's clearly unconstitutional use of force despite having the authority, opportunity, and duty to do so.

## II. PARTIES

7.     Plaintiff Hailey Sherrill is a natural person and citizen of the State of Oklahoma, residing in Sequoyah County, Oklahoma. At all times relevant to this action, Ms. Sherrill was a tenant and lawful occupant of an apartment at Garden Walk Apartments, located in Vian, Oklahoma.

8.     Defendant City of Vian, Oklahoma, is a municipality and political subdivision of the State of Oklahoma. The City of Vian operates the Vian Police Department. At all times relevant to this action, Defendants Rice and Sanders were employees of the City of Vian. For purposes of Plaintiff's federal claims, Defendants Rice and Sanders acted under color of state law. For purposes of Plaintiff's alternative state-law negligence claim (Count VII), and only in the alternative, Defendants Rice and Sanders acted within the scope of their employment. The City of Vian is a proper defendant under the Oklahoma Governmental Tort Claims Act, 51 O.S. § 151 et seq.

9.     Defendant Robert Ryan Rice is a natural person and, at all times relevant to this action, was a sworn law enforcement officer employed by the Vian Police Department, acting under color of state law. Defendant Rice is sued in his individual capacity for his personal participation in the violations of Plaintiff's

constitutional and state-law rights. Upon information and belief, Defendant Rice resigned or was permitted to resign from the Vian Police Department following the events at issue in this case and is currently employed as a law enforcement officer by the Gore Police Department, Gore, Oklahoma.

10.     Defendant Kaitlyn Marie Sanders is a natural person and, at all times relevant to this action, was a sworn law enforcement officer employed by the Vian Police Department, acting under color of state law. Defendant Sanders is sued in her individual capacity for her personal participation in and failure to intervene to prevent the violations of Plaintiff's constitutional rights.

### III. JURISDICTION AND VENUE

11.     This Court has original subject matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331 (federal question) because this action arises under the Constitution and laws of the United States, specifically 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

12.     This Court has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367(a) because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

13.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in Sequoyah County, Oklahoma, which lies within the Eastern District of Oklahoma.

14.     As a prerequisite to filing the state-law claims against the City of Vian and the Vian Police Department, Plaintiff filed a Notice of Claim pursuant to the Oklahoma Governmental Tort Claims Act, 51 O.S. § 156, on or about July 9, 2025. The Notice was delivered to the City of Vian Clerk's Office (at two

addresses) and the Vian Police Department via certified mail, with delivery confirmed by return receipts on or about July 11, 2025. No written response was received. The claim was therefore deemed denied ninety (90) days thereafter pursuant to 51 O.S. § 157(B). This action is filed within one hundred eighty (180) days of the deemed denial.

## IV. FACTUAL ALLEGATIONS

### A. Background

15. Ms. Sherrill was a tenant of Garden Walk Apartments in Vian, Oklahoma, where she leased an apartment pursuant to a written lease agreement with Vian Properties II, d/b/a GardenWalk of Vian (the "Lease"). The apartment was Ms. Sherrill's home.

16. The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures, and "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." A private home stands at the very core of the Fourth Amendment's protections.

17. On September 25, 2024, Brett Hooper, an individual with an outstanding felony arrest warrant, had been in the vicinity of Garden Walk Apartments. A resident of the complex reported to police that Hooper had been seen at or near the apartment complex. Ms. Sherrill did not know that Hooper had entered or was present inside her apartment.

18. The same resident who reported seeing Hooper at the complex also informed Defendant Rice that Hooper had been seen *leaving* the apartment approximately thirty (30) minutes prior to the officers' arrival. This exchange was captured on Defendant Rice's body camera. Despite this knowledge, Defendant Rice omitted this critical information from his official reports and sworn affidavit.

19. The Vian Police Department possessed only an arrest warrant for Brett Hooper. At no point on September 25, 2024, or at any time prior thereto, did any officer of the Vian Police Department obtain or possess a search warrant for Ms. Sherrill's apartment.

20. According to Chief Harkins' subsequent public statement, he specifically instructed Defendant Rice not to enter Ms. Sherrill's apartment without first obtaining a formal search warrant.

**B. The Unlawful Scheme to Enter Plaintiff's Home**

21. At approximately 7:30 p.m. on September 25, 2024, Defendants Rice and Sanders responded to Garden Walk Apartments following the report regarding Brett Hooper. Officer Cody Jackson of the Vian Police Department and a Sequoyah County Deputy also responded as backup.

22. Upon arriving at Ms. Sherrill's apartment, Defendant Rice and Defendant Sanders knocked on the door. No one responded.

23. Rather than obtaining a search warrant — and knowing he lacked legal authority to enter Ms. Sherrill's home — Defendant Rice devised a scheme to gain entry through Christa Deliz, the apartment complex manager.

24.     Defendant Rice contacted Ms. Deliz and informed her that if Brett Hooper was inside the apartment, other law enforcement units would eventually be called to forcefully enter, potentially causing property damage. This communication was designed to, and did, pressure Ms. Deliz into facilitating access to the apartment.

25.     Ms. Deliz contacted her supervisor at Belmont Management Company, who authorized her to conduct a "walkthrough" of the apartment, purportedly pursuant to the terms of the Lease.

26.     In fact, the Lease contained no provision authorizing unannounced or on-demand inspections or walkthroughs. Section 8(H) of the Lease limited inspections to pre-move-in and post-move-out inspections conducted by appointment using specific inventory and condition forms. Both Defendant Rice and Ms. Deliz falsely told Ms. Sherrill that the Lease granted management the right to inspect the apartment "at any time." This was not true.

27.     Under Oklahoma law, a landlord or property manager does not have the authority to consent to a law enforcement search of a tenant's occupied dwelling. Oklahoma's Residential Landlord and Tenant Act, 41 O.S. § 128, requires a landlord to provide reasonable notice before entering a rental unit for non-emergency purposes. No such notice was provided here, and no landlord notice — even if properly given — would authorize a law enforcement search of a tenant's home.

**C. Coercion and Threats Against Ms. Sherrill**

28.     When Ms. Deliz and Defendant Rice proceeded to the apartment and knocked on the door, Ms. Sherrill answered. Defendant Rice and Ms. Deliz then informed her that management was going to conduct a "walkthrough" and that officers were present to "keep the peace."

29.    Ms. Sherrill clearly and unequivocally refused to consent to any search of her apartment. She repeatedly told Defendant Rice and Ms. Deliz that she did not want them to enter.

30.    Despite Ms. Sherrill's refusal, Defendant Rice subjected her to a campaign of coercive and intimidating threats designed to pressure her into surrendering her constitutional rights. Among other things, Defendant Rice:

a.    Threatened Ms. Sherrill that specialized tactical units were coming and would "kick down the door and blow out the windows" if she continued to refuse entry;

b.    Threatened Ms. Sherrill that she would be charged with "Harboring a Fugitive" if law enforcement found Brett Hooper in her apartment;

c.    Falsely represented that he possessed legal authority to enter her home;

d.    Falsely claimed that the Lease authorized unannounced inspections.

31.    These threats were made deliberately and in bad faith. Defendant Rice knew he did not have a search warrant. He knew that an arrest warrant for a third party does not authorize entry into a non-suspect's home. He made the threats anyway, because Ms. Sherrill had the audacity to assert her constitutional rights.

32.    Ms. Sherrill maintained her refusal. She did not consent. She never consented.

**D. The Unlawful Entry and Search**

33.    Notwithstanding Ms. Sherrill's clear and unequivocal refusal of consent, Ms. Deliz entered the apartment, and Defendant Rice followed immediately behind her. Upon information and belief, Defendant Rice told Ms. Deliz words to the effect of "if you want to go ahead, I will just follow you," using her as a vehicle to effect what he could not lawfully accomplish himself.

34.    Defendant Sanders was aware of Ms. Sherrill's refusal of consent, was present during the exchange, and took no action to prevent the unlawful entry. Defendant Sanders did not intervene, did not attempt to dissuade Defendant Rice, and did not report the unlawful conduct. Instead, she remained positioned at the apartment and participated in the events that followed.

35.    Once inside the apartment, Defendant Rice directed the search. Despite later characterizing his role as merely "following" the apartment manager, Defendant Rice controlled where Ms. Deliz searched, used his department-issued flashlight to illuminate the darkened apartment, and moved through the residence in a manner consistent with a law enforcement search — not a management "walkthrough."

36.    Throughout the search, Ms. Sherrill continued to demand that Defendant Rice and Ms. Deliz leave her home. Her demands were ignored.

37.    The apartment manager, Ms. Deliz, and Defendant Rice proceeded to a bedroom in the northwest portion of the apartment. Ms. Deliz opened a closet door and pulled a mattress away from a wall, revealing Brett Hooper crouching behind it.

38.    The entry into and search of Ms. Sherrill's home was unlawful. No search warrant had been issued. Ms. Sherrill did not consent. The arrest warrant for Brett Hooper authorized only his arrest — it did not authorize the search of a third party's home. See *Steagald v. United States*, 451 U.S. 204 (1981) (holding that an arrest warrant does not authorize entry into a third party's home to search for the subject of the warrant). No exigent circumstances existed — the officers had time to obtain a warrant, and a resident had reported that Hooper had left the premises approximately thirty minutes earlier. No recognized exception to the warrant requirement applied.

**E. The Assault and Excessive Force**

39.     After Brett Hooper was located, Defendant Rice began placing Hooper in handcuffs. At that point, Ms. Sherrill — who was inside her own home, where she had every right to be — opened the bedroom door.

40.     In his subsequent report and sworn affidavit, Defendant Rice claimed that the door "slammed into his left hip" and caused him to lose his balance. Body camera footage reviewed by the Oklahoma State Bureau of Investigation did not support Defendant Rice's claim that he "was struck with a level of severity which would cause [him] to lose balance." The State of Oklahoma subsequently charged Defendant Rice with felony Perjury for, among other things, false statements in his sworn affidavit regarding the events of September 25, 2024.

41.     In response to Ms. Sherrill opening a door within her own home, Defendant Rice unleashed a violent and disproportionate assault on Ms. Sherrill:

    a.     Defendant Rice grabbed Ms. Sherrill by the throat;

    b.     Defendant Rice slammed Ms. Sherrill into a wall;

    c.     Defendant Rice pushed Ms. Sherrill down a hallway and into a bedroom;

    d.     Defendant Rice drew his department-issued Taser, pointed it at Ms. Sherrill's midsection, and — without any verbal warning whatsoever — discharged the Taser, sending electrified probes into her body;

    e.     When Ms. Sherrill collapsed to the ground, Defendant Rice commanded her to place her hands behind her back. When she was unable to immediately comply — having just been incapacitated by an electric shock — Defendant Rice administered a second Taser cycle;

    f.     Only after the second Taser cycle was Ms. Sherrill placed in handcuffs.

42.     Defendant Rice admitted in his own official report that "no audible warning was given" before deploying the Taser.

43.     At the time of the Taser deployment, Ms. Sherrill was unarmed. She was 5 feet, 5 inches tall. She was standing in her own home. She was not suspected of any violent crime. She had committed no crime. The entirety of the encounter arose because she had exercised her constitutional right to refuse a warrantless search.

44.     The force deployed by Defendant Rice was objectively unreasonable under any standard. Ms. Sherrill posed no immediate threat to the safety of the officers or others. She was not attempting to flee. The severity of the force — choking, slamming, and two Taser cycles without warning — was grossly disproportionate to any conceivable governmental interest. Even under Defendant Rice's own account of events, the use of force was excessive and unjustified.

45.     During the assault, Defendant Rice called out for Defendant Sanders to assist in restraining Ms. Sherrill. Defendant Sanders responded and physically participated in the effort to restrain Ms. Sherrill. Despite being present during Defendant Rice's use of force against Ms. Sherrill — and personally witnessing the continued restraint and Taser deployment without warning — Defendant Sanders did not intervene to stop or limit the force being applied. Defendant Sanders had both the opportunity and the authority to intervene, and she failed to do so.

46.     After Ms. Sherrill was handcuffed, Emergency Medical Services were called to the scene. Taser probes were removed from Ms. Sherrill's arms and stomach. She was transported to Northeastern Health System (Sallisaw) for medical clearance.

47.     The force used by Defendant Rice caused Ms. Sherrill significant physical injuries, including but not limited to: extensive bruising across her arms, shoulder, hand, wrist, chest and clavicle area, hip, and thigh; puncture wounds and abrasions on her inner arm consistent with Taser probe deployment; pain in her throat consistent with being choked; and soft tissue injuries from being slammed into a wall. These injuries are documented in photographs taken after the incident.

**F. The False Arrest and Imprisonment**

48.    After the assault, Defendant Rice arrested Ms. Sherrill in her own home. He charged her with Obstruction, Assault and Battery on a Police Officer, Resisting Arrest, and Harboring a Fugitive.

49.    None of these charges had any factual or legal basis. The "Obstruction" charge was predicated on Ms. Sherrill's refusal to allow an unlawful, warrantless search of her own home. The "Assault and Battery on a Police Officer" charge was based on the alleged door contact, which body camera footage contradicted. The "Resisting Arrest" charge arose from Ms. Sherrill's natural, involuntary reactions to being choked, slammed into a wall, and tased. The "Harboring a Fugitive" charge was based on the allegation that Brett Hooper was found in Ms. Sherrill's apartment — a discovery that was itself the product of an unlawful and unconstitutional search.

50.    Defendant Rice's charges were, in essence, an attempt to retroactively justify his unlawful conduct — to fabricate criminal liability for Ms. Sherrill after the fact in order to provide cover for his own violations of law.

51.    Ms. Sherrill was transported to the Sequoyah County Detention Center and incarcerated overnight. She was not permitted to leave. She did not post any bond.

52.    The following day, September 26, 2024, Vian Police Investigator Kevin Kirk reviewed Defendant Rice's reports and identified significant problems with the narratives. Investigator Kirk brought these concerns to Chief Mark Harkins, who then reviewed the body camera footage from the incident.

53.    Upon reviewing the body camera footage, Chief Harkins immediately recognized that Defendant Rice's conduct was unlawful. Chief Harkins contacted the Sequoyah County District Attorney's Office and secured Ms. Sherrill's immediate

release from custody. No charges have been prosecuted against Ms. Sherrill by any prosecuting authority. No bond was posted. She was simply released, because Defendant Rice's entire basis for the arrest was fabricated.

54.    Upon information and belief, Defendant Rice was subsequently given the option to resign from the Vian Police Department or face termination, and he resigned. Upon information and belief, he was then hired as a law enforcement officer by the Gore Police Department.

### G. The Aftermath

55.    Chief Mark Harkins of the Vian Police Department subsequently published a public video detailing the misconduct of Defendant Rice and the other officers involved in the September 25, 2024 incident. In this video, Chief Harkins explained, in detail, the numerous ways in which Defendant Rice violated Ms. Sherrill's rights, training protocols, and department policy. Chief Harkins also identified failures by the other officers present, including their failure to intervene.

56.    In this video, Chief Harkins specifically stated that he had instructed Defendant Rice not to enter the apartment without obtaining a formal search warrant, and that Defendant Rice disobeyed that instruction.

57.    In a conversation recorded on body camera footage following the incident, Defendant Rice described his approach to warrant service in violent terms, stating he preferred to keep "cleaning them up one at a time, whether it's a clean kill or a bloody mess."

**H. Criminal Prosecution of Defendant Rice**

58.      On or about December 2, 2024, Sequoyah County District Attorney Jack Thorp formally requested that the Oklahoma State Bureau of Investigation ("OSBI") conduct a criminal investigation into Defendant Rice's conduct on September 25, 2024.

59.      OSBI Special Agent Christian Goode of the Violent Crimes Unit was assigned to investigate. Agent Goode reviewed body camera footage from multiple officers, conducted interviews of witnesses — including Ms. Sherrill on January 16, 2025 — and prepared a detailed Affidavit for Arrest Warrant.

60.      Agent Goode's investigation confirmed, among other things, that: (a) no search warrant was ever issued for Ms. Sherrill's apartment; (b) Ms. Sherrill did not consent to the entry; (c) Defendant Rice used the apartment manager to effectuate an unauthorized search; (d) the body camera footage did not support Defendant Rice's claim that he was knocked off balance by a door; and (e) Defendant Rice made false statements in his sworn affidavit to justify the arrest of Ms. Sherrill.

61.      On June 9, 2025, the State of Oklahoma filed a Felony Information charging Defendant Rice in Sequoyah County District Court, Case No. CF-2025-00154, with the following offenses:

a.        *Count 1: Perjury* — 21 O.S. § 491 (Felony) — for making false sworn statements in his affidavit regarding the events of September 25, 2024;

b.        *Count 2: Assault and Battery with a Dangerous Weapon* — 21 O.S. § 645 (Felony) — for deploying a Taser against Ms. Sherrill;

c.        *Count 3: Breaking and Entering* — 21 O.S. § 1438(B) (Misdemeanor) — for unlawfully entering Ms. Sherrill's home.

62. A warrant was issued for Defendant Rice's arrest, with bond set at $7,500.00. On January 12, 2026, Defendant Rice entered pleas of No Contest to all counts, resulting in a four-year deferred sentence for felony Perjury, a 30-day deferred sentence for Breaking and Entering, and a 90-day suspended sentence for a reduced charge of misdemeanor Assault and Battery.

## V. CAUSES OF ACTION

### COUNT I — 42 U.S.C. § 1983: UNLAWFUL SEARCH AND SEIZURE

**(Fourth Amendment — Against Defendants Rice and Sanders)**

63. Plaintiff re-alleges and incorporates by reference the allegations set forth in all preceding paragraphs as though fully set forth herein.

64. The Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, protects individuals from unreasonable searches and seizures, including warrantless entries into their homes.

65. Defendant Rice, acting under color of state law, violated Ms. Sherrill's clearly established Fourth Amendment rights by orchestrating and executing a warrantless entry into and search of her home without valid consent and without any recognized exception to the warrant requirement. Defendant Sanders, also acting under color of state law, violated Ms. Sherrill's clearly established Fourth Amendment rights by knowingly facilitating the unlawful entry, taking up a position to support it, and failing to intervene to prevent it despite her knowledge that no warrant had been obtained and that Ms. Sherrill had refused consent.

66. Ms. Sherrill repeatedly and unequivocally refused to consent to any search of her home. Her refusal was clear to all officers present.

67. An arrest warrant for Brett Hooper did not authorize the entry into or search of Ms. Sherrill's home because she was not the subject of the warrant. See *Steagald v. United States*, 451 U.S. 204 (1981).

68. The purported "consent" of the apartment manager, Christa Deliz, was legally insufficient to authorize a law enforcement search of Ms. Sherrill's occupied dwelling.

69. No exigent circumstances justified the warrantless entry. The officers had been on scene for an extended period, had time to obtain a warrant, and were told by a resident that Hooper had left the premises approximately thirty minutes earlier.

70. Defendant Sanders actively participated in the unlawful entry and search of Ms. Sherrill's home. Defendant Sanders was present for the entirety of the encounter leading up to the entry, including Ms. Sherrill's repeated refusals of consent. Defendant Sanders was aware that no search warrant had been obtained. Despite this knowledge, she actively facilitated the entry. Specifically, Defendant Sanders positioned herself at the threshold of the apartment, securing the perimeter while Defendant Rice and Ms. Deliz entered and conducted the search over Ms. Sherrill's objections. Defendant Sanders' presence and participation were integral to the execution of the unlawful entry.

71. As a direct and proximate result of Defendant Rice's orchestration and execution of the unlawful entry and Defendant Sanders' knowing facilitation of it, Ms. Sherrill suffered physical injuries, emotional distress, loss of liberty, humiliation, and other damages as set forth herein.

## COUNT II — 42 U.S.C. § 1983: EXCESSIVE FORCE

### (Fourth Amendment — Against Defendant Rice)

72. Plaintiff re-alleges and incorporates by reference the allegations set forth in all preceding paragraphs as though fully set forth herein.

73. The Fourth Amendment, as interpreted by the Supreme Court in Graham v. Connor, 490 U.S. 386 (1989), prohibits law enforcement officers from using force that is objectively unreasonable under the totality of the circumstances.

74. Defendant Rice's use of force against Ms. Sherrill — including grabbing her by the throat, slamming her into a wall, and deploying a Taser against her body twice without any verbal warning — was objectively unreasonable under the circumstances.

75. In evaluating the reasonableness of force under Graham v. Connor, the relevant factors include the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether the suspect was actively resisting arrest or attempting to evade arrest by flight. Each of these factors weighs heavily against the reasonableness of Defendant Rice's use of force:

   a. *Severity of crime:* Ms. Sherrill was not suspected of any crime at the time Defendant Rice entered her home. Any alleged "offenses" — obstruction, resisting, harboring — arose solely from her assertion of her constitutional right to refuse a warrantless search and from the officers' own unlawful conduct;

   b. *Immediate threat:* Ms. Sherrill was unarmed. She was 5'5" tall. She was in her own home. She made no aggressive movements toward any officer. At most, she pushed or opened a door. She posed no immediate threat to anyone;

c.    *Active resistance or flight:* Ms. Sherrill was not attempting to flee. Her physical reactions — pulling away, screaming — were natural responses to being choked and assaulted in her own home by an officer who had no legal right to be there.

76. Defendant Rice admitted in his own official report that he gave "no audible warning" before deploying the Taser, in violation of standard law enforcement protocols for conducted energy weapons.

77. The force deployed was grossly disproportionate to any legitimate governmental interest. The use of two Taser cycles, combined with choking and body-slamming, against an unarmed, non-violent woman in her own home — during an encounter that was itself unlawful — shocks the conscience.

78. As a direct and proximate result of Defendant Rice's excessive force, Ms. Sherrill suffered significant physical injuries, including extensive bruising, Taser puncture wounds, soft tissue injuries, and pain, as well as severe emotional distress.

### COUNT III — 42 U.S.C. § 1983: FAILURE TO INTERVENE
### (Fourth Amendment — Against Defendant Sanders)

79. Plaintiff re-alleges and incorporates by reference the allegations set forth in all preceding paragraphs as though fully set forth herein.

80. A law enforcement officer has an affirmative duty under the Fourth Amendment to intervene to prevent the use of excessive force by a fellow officer when the officer is present, has knowledge of the violation, and has a realistic opportunity to intervene. See Estate of Booker v. Gomez, 745 F.3d 405 (10th Cir. 2014); Mick v. Brewer, 76 F.3d 1127 (10th Cir. 1996); Fogarty v. Gallegos, 523 F.3d 1147 (10th Cir. 2008).

81.     Defendant Sanders was present at Ms. Sherrill's apartment throughout the encounter. She was aware that Ms. Sherrill had refused consent to the search. She witnessed Defendant Rice's unlawful entry. She was called into the apartment by Defendant Rice to assist in detaining Ms. Sherrill.

82.     Defendant Sanders was present during Defendant Rice's use of excessive force against Ms. Sherrill. Defendant Rice called for Defendant Sanders to assist during the encounter, and she responded, placing her in the immediate vicinity during the continued physical restraint and Taser deployment without verbal warning.

83.     Defendant Sanders had a realistic opportunity to intervene. She was physically present, standing in the immediate vicinity, and was a sworn officer with the authority and duty to stop unconstitutional conduct. The use of force was not instantaneous — it unfolded over a series of escalating acts, and sufficient time elapsed between the initial physical assault and the final Taser shock for an officer to intervene.

84.     Defendant Sanders failed to take any action to stop or limit Defendant Rice's unconstitutional use of force. Instead, she participated in physically restraining Ms. Sherrill.

85.     As a direct and proximate result of Defendant Sanders' failure to intervene, Ms. Sherrill suffered the injuries and damages described herein.

## COUNT IV — 42 U.S.C. § 1983: FALSE ARREST AND FALSE IMPRISONMENT
### (Fourth Amendment — Against Defendant Rice)

86.     Plaintiff re-alleges and incorporates by reference the allegations set forth in all preceding paragraphs as though fully set forth herein.

87.     The Fourth Amendment protects against arrests without probable cause. An officer violates the Fourth Amendment when he or she arrests an individual without probable cause to believe the individual has committed or is committing a crime.

88.     Defendant Rice arrested Ms. Sherrill without probable cause. The charges of Obstruction, Assault and Battery on a Police Officer, Resisting Arrest, and Harboring a Fugitive were based on fabricated allegations and false statements in a sworn affidavit, as subsequently confirmed by the OSBI investigation and the felony Perjury charge.

89.     The "obstruction" charge was based on Ms. Sherrill's lawful exercise of her Fourth Amendment right to refuse a warrantless search of her home. A citizen's refusal to consent to an unlawful search does not constitute obstruction.

90.     The "assault and battery" charge was based on Defendant Rice's false claim that the door caused him to lose his balance — a claim contradicted by body camera footage and the basis for the Perjury charge against him.

91.     The "harboring a fugitive" charge lacked any independent factual basis. Its sole predicate — the presence of Brett Hooper — was discovered only as a result of Defendant Rice's unconstitutional entry into Ms. Sherrill's home. Moreover, Ms. Sherrill did not know that Hooper had entered or was concealed within her apartment.

92.     The "resisting arrest" charge was derivative of the other baseless charges and arose from Ms. Sherrill's involuntary physical reactions to being assaulted.

93.     No prosecutor ever filed any charge against Ms. Sherrill. The Chief of Police secured her immediate release from custody upon reviewing the body camera footage. Ms. Sherrill spent the night incarcerated at the Sequoyah County Detention Center based on charges that were wholly without legal or factual basis.

94.    As a direct and proximate result of Defendant Rice's false arrest and false imprisonment, Ms. Sherrill was deprived of her liberty, suffered humiliation, emotional distress, anxiety, and other damages.

## COUNT V — STATE LAW: BATTERY

### (Against Defendant Rice)

95.    Plaintiff re-alleges and incorporates by reference the allegations set forth in all preceding paragraphs as though fully set forth herein.

96.    Under Oklahoma law, a battery is any willful and unlawful use of force or violence upon the person of another. 21 O.S. § 642.

97.    Defendant Rice committed battery upon Ms. Sherrill by intentionally grabbing her throat, slamming her into a wall, and deploying a Taser against her body twice, all without legal justification.

98.    Defendant Rice's conduct was willful, intentional, malicious, and in bad faith. His use of force was not authorized by law and did not fall within any privilege or immunity. He entered Ms. Sherrill's home unlawfully, provoked the encounter, and responded to Ms. Sherrill's lawful exercise of her rights with violence.

99.    As a direct and proximate result of Defendant Rice's battery, Ms. Sherrill suffered the physical and emotional injuries described herein.

## COUNT VI — STATE LAW: FALSE IMPRISONMENT

### (Against Defendant Rice)

100.    Plaintiff re-alleges and incorporates by reference the allegations set forth in all preceding paragraphs as though fully set forth herein.

101.    Under Oklahoma law, false imprisonment is the unlawful restraint of a person against her will.

102.    Defendant Rice unlawfully restrained Ms. Sherrill by arresting her without probable cause and causing her to be incarcerated overnight at the Sequoyah County Detention Center.

103.    The arrest was without probable cause, as the underlying charges were based on fabricated allegations and false statements, and no charges were ever filed by a prosecuting authority.

104.    As a direct and proximate result of Defendant Rice's false imprisonment, Ms. Sherrill suffered loss of liberty, humiliation, emotional distress, and other damages.

## COUNT VII — OKLAHOMA GOVERNMENTAL TORT CLAIMS ACT: NEGLIGENCE
### (Pleaded in the Alternative Against City of Vian)

105.    Plaintiff re-alleges and incorporates by reference the allegations set forth in all preceding paragraphs as though fully set forth herein, except to the extent those allegations assert malice, bad faith, or intentional torts. This Count is pleaded strictly in the alternative.

106.    Plaintiff has satisfied all conditions precedent to bringing this claim under the Oklahoma Governmental Tort Claims Act, 51 O.S. § 151 et seq., including timely filing a Notice of Claim, which was deemed denied.

107.    For purposes of this count only, and only if Defendants Rice and Sanders are found to have acted within the scope of their employment and in good faith, they were employees of the City of Vian whose negligence was the proximate cause of Plaintiff's injuries.

108.    The City of Vian, through its officers, owed Ms. Sherrill a duty of reasonable care in the planning and execution of law enforcement operations. In the alternative, and strictly assuming good-faith conduct, the City of Vian, through its officers and agents, breached that duty by negligently planning and executing the warrant service. Specifically, the City breached its duty by:

   a.    Negligently planning the execution of the arrest warrant for a third party at Ms. Sherrill's residence without first verifying residency or securing a search warrant;

   b.    Negligently relying on the apartment manager's purported "walkthrough" to circumvent the legal requirement for a search warrant or lawful consent;

   c.    Negligently failing to heed the resident's report that the target of the warrant had already left the premises.

109.    As a direct and proximate result of the City of Vian's negligent planning and execution of the warrant service and subsequent entry into Ms. Sherrill's home, Ms. Sherrill suffered the injuries and damages specifically flowing from that entry.

## VI. DAMAGES

110.    As a direct and proximate result of Defendant Rice's unlawful entry, excessive force, and false arrest; Defendant Sanders' failure to intervene; and the City of Vian's negligence, Ms. Sherrill has suffered and continues to suffer the following damages:

   a.    Physical pain and suffering from injuries sustained during the assault, including throat injuries, multiple contusions and bruising, Taser puncture wounds, and soft tissue injuries;

   b.    Past, present, and future medical expenses;

    c.       Severe emotional distress, including but not limited to anxiety, fear, humiliation, and post-traumatic stress resulting from the violent assault in her own home, the false arrest, and the overnight imprisonment;

    d.       Loss of liberty during her unlawful overnight imprisonment;

    e.       Loss of her sense of security and sanctity in her own home;

    f.       Damage to her reputation as a result of being arrested and transported to jail in view of her neighbors and community members;

    g.       Economic losses and lost wages;

    h.       Such other damages as may be established at trial.

111. The conduct of Defendant Rice was willful, wanton, malicious, and performed with reckless and callous indifference to Ms. Sherrill's federally protected rights, entitling Ms. Sherrill to an award of punitive damages against Defendant Rice pursuant to 42 U.S.C. § 1983. See *Smith v. Wade*, 461 U.S. 30 (1983).

112. Defendant Rice acted with actual malice and deliberate indifference to Ms. Sherrill's rights when he: entered her home without a warrant despite knowing he lacked legal authority to do so; deployed a Taser against her without any warning; and fabricated charges to justify his unlawful conduct. Punitive damages are necessary to punish Defendant Rice for his egregious misconduct and to deter such conduct in the future.

113. The conduct of Defendant Sanders demonstrated reckless and callous indifference to Ms. Sherrill's federally protected rights. Defendant Sanders stood by and actively participated in restraining Ms. Sherrill while Defendant Rice employed choking, wall-slamming, and Taser deployment without warning — conduct that was so obviously unconstitutional that any reasonable officer would have recognized a duty to intervene. Plaintiff is entitled to punitive damages against Defendant Sanders.

114.     Plaintiff is entitled to an award of reasonable attorney's fees, costs, and expenses pursuant to 42 U.S.C. § 1988.

## VII. JURY DEMAND

115.     Plaintiff demands a trial by jury on all claims and issues so triable.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Hailey Sherrill respectfully prays that this Court enter judgment in her favor and against Defendants, jointly and severally where applicable, and award the following:

A.     Compensatory damages in an amount to be determined at trial for the physical injuries, emotional distress, pain and suffering, loss of liberty, and other damages caused by Defendant Rice's unlawful conduct, Defendant Sanders' failure to intervene, and the City of Vian's negligence;

B.     Punitive damages against Defendant Robert Ryan Rice in an amount sufficient to punish his willful, wanton, and malicious conduct and to deter similar conduct in the future;

C.     Punitive damages against Defendant Kaitlyn Marie Sanders in an amount sufficient to punish her reckless and callous indifference to Plaintiff's constitutional rights and to deter similar conduct in the future;

D.     An award of reasonable attorney's fees, costs, and expenses pursuant to 42 U.S.C. § 1988;

E.     Pre-judgment and post-judgment interest at the maximum rate allowed by law;

F.     Such other and further relief as this Court deems just and proper.

Respectfully submitted,

**LAIRD, HAMMONS, LAIRD, PLLC**

*D. Colby Addison*

---

Chris Hammons, OBA #20233

Jason M. Hicks, OBA #22176

D. Colby Addison, OBA #32718

1332 S.W. 89th Street

Oklahoma City, OK 73159

Telephone: (405) 703-4567

Facsimile: (405) 703-4061

chris@lhllaw.com

jason@lhllaw.com

colby@lhllaw.com

*Attorneys for Plaintiff*